IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Newport News Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Criminal Case No. 4:07CR22 (RCY) |
| | ) | |
| JERMAINE CHAPMAN, | ) | |
| Defendant. | ) | |
| | ) | |

**MEMORANDUM OPINION**

This matter is before the Court on the Motion for Compassionate Release pursuant to 18 U.S.C. § 3582(c)(1)(A) ("Motion for Compassionate Release") filed by the Defendant *pro se* on July 28, 2020 (ECF No. 78). The Defendant also filed documents under seal in support of his Motion for Compassionate Release that include his Bureau of Prisons ("BOP") Individualized Reentry Plan and medical records (ECF No. 79).

On May 2, 2007, the Defendant, Jermaine Chapman ("Chapman" or "Defendant"), pled guilty pursuant to a written plea agreement to conspiracy to distribute and to possess with intent to distribute cocaine and cocaine base. (ECF No. 15.) Chapman was attributed with 33.933376 kilograms of cocaine base, which yielded an offense level of 38 under the applicable Sentencing Guidelines. (Docket No. 49.) After receiving a three-level reduction for acceptance of responsibility, Chapman had a total offense level of 35 and a criminal history category of V, resulting in a Sentencing Guideline range of 262 to 327 months of imprisonment. (*Id*.) On August 6, 2007, Chapman was sentenced to 216 months of imprisonment and five years of supervised release, and the Judgment in a Criminal Case was entered on August 7, 2007. (Docket No. 21.)

According to the BOP, Chapman was transferred on May 4, 2021, from prison into a halfway house (also called a residential reentry center or RRC), where he is under the supervision

of the BOP-designated residential reentry managers ("RRMs"). The transfer of Chapman was pursuant to 18 U.S.C. § 3621(e), because Chapman is completing the BOP's Residential Drug Abuse Treatment Program, and the halfway house placement is the final part of that program. (*See* ECF No. 79 at 3.) The RRMs *may* transfer Chapman into home confinement if they determine it is appropriate to do so after a period of time at the halfway house. Chapman's halfway house placement did not require application of the BOP's expanded authority under the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act"), Pub. L. No. 116-136, § 12003(b)(2), 134 Stat. 281, 516 (2020).[1] The BOP anticipates that Chapman will complete the service of his sentence on January 28, 2022, which point he will begin his five-year term of supervised release. *See* https://www.bop.gov/inmateloc/ (and enter Chapman's name or BOP number).

Chapman's case was reassigned to the undersigned on December 30, 2020. The Motion for Compassionate Release and documents filed in support by Chapman have been reviewed and considered. For the reasons set forth herein, the Motion for Compassionate Release will be denied.

The Motion for Compassionate Release sought Chapman's release from FCI Morgantown, the facility in which he was serving his sentence, because of his medical conditions, described in the Motion for Compassionate Release, and his "susceptibility to COVID-19 in prison." (Mot. Compassionate Release, ECF No. 78 at 6.) Given that Chapman was released from FCI Morgantown and is being permitted to serve the remainder of his sentence at a halfway house, it

---

[1] Under § 3624(c)(2), the BOP may release an incarcerated defendant to home confinement "for the shorter of 10 percent of the term of imprisonment of that prisoner or six months." The CARES Act permits the BOP to expand these time frames. The Court has no authority under § 3624(c)(2) to direct the BOP to place an incarcerated defendant in home confinement because such decisions are committed solely to the BOP's discretion. *United States v. Calderon*, 801 F. App'x 730, 731-32 (11th Cir. 2020) (explaining that federal courts lack jurisdiction to grant early release to home confinement). Once a court imposes a sentence, "[t]he [BOP] shall designate the place of the prisoner's imprisonment[.]" 18 U.S.C. § 3621(b); s*ee Tapia v. United States*, 564 U.S. 319, 331 (2011) ("A sentencing court can *recommend* that the BOP place an offender in a particular facility or program . . . [b]ut decisionmaking authority rests with the BOP.") (emphasis in original).

seems that the relief Chapman sought has been effectuated by the BOP's having transferred Chapman from the prison to the halfway house, arguably rendering the Motion for Compassionate Release moot. Nevertheless, the Court has considered the Motion.

As amended by the First Step Act, 18 U.S.C. § 3582(c)(1)(A) authorizes courts to "reduce the term of imprisonment" of a defendant for "extraordinary and compelling reasons" "upon motion of the Director of the Bureau of Prisons" or "upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or [after] the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A)(i). Once the administrative remedies under § 3582(c)(1)(A) have been exhausted or waived, the Court may reduce or modify a sentence when "extraordinary and compelling reasons warrant such a reduction." *Id.* Even if extraordinary and compelling reasons exist for a reduction in sentence, § 3582(c)(1)(A) requires courts to consider "the factors set forth in section 3553(a) [of Title 18] to the extent that they are applicable" and "applicable policy statements issued by the [United States] Sentencing Commission" before granting a sentence modification. § 3582(c)(1)(A).

To that end, § 3553(a) requires courts to consider, among other factors, the nature and circumstances of the underlying offense and the history and characteristics of the defendant, as well as the need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, provide just punishment, afford adequate deterrence and protect the public from further crimes of the defendant. 18 U.S.C. § 3353(a)(1)-(2). With regard to "applicable policy statements issued by the Sentencing Commission," the United States Court of Appeals for the Fourth Circuit recently clarified that "there currently exists no 'applicable policy statement[].'" *United States v.*

*McCoy*, 981 F.3d 271, 281 (4th Cir. 2020). Therefore, the guidance under § 1B1.13 of the United States Sentencing Commission Guidelines Manual does not apply to a motion for a reduction filed by a defendant. *Id.* at 282 ("A sentence reduction brought about by motion of a defendant, rather than the BOP, is not a reduction 'under this policy statement.' By its plain terms, in short, § 1B1.13 does not apply to defendant-filed motions. . . .") (citations omitted). Thus, the Fourth Circuit explains in the *McCoy* opinion that "district courts need not conform . . . to § 1B1.13 in determining whether there exist 'extraordinary and compelling reasons' for a sentence reduction." *Id.* at 283.[2]

Ultimately, the Court may reduce a defendant's sentence under § 3582(c)(1)(A) only after the Court finds (1) that the defendant establishes extraordinary and compelling reasons for the reduction, and (2) that a reduction in the defendant's sentence would not undermine the relevant factors under § 3553(a). The Court assumes for purposes of addressing the pending motions in this case that Chapman exhausted his administrative remedies.

Despite the fact that Chapman suffers from several serious medical conditions, including heart disease and hypertension as described in the Motion for Compassionate Release, there is no indication that those conditions were not being properly addressed and treated within the BOP, and the Court does not find that "extraordinary and compelling reasons" warrant a reduction in Chapman's sentence. This is especially true in light of Chapman's transfer to the halfway house, which has mooted his concern about his particular vulnerability to contracting COVID-19 within FCI Morgantown. While Chapman has some serious medical conditions that require continued

---

[2] Although the policy statement in U.S.S.G. § 1B1.13 is not binding after the Fourth Circuit's decision in *McCoy*, many courts are treating § 1B1.13 "as providing useful guidance about how the Court should exercise its discretion under § 3582(c)(1)(A)," but they are not "treat[ing] its provisions as binding." *United States v. Dean*, No. 15-CR-0339(1), 2020 WL 7055349, at *1 (D. Minn. Dec. 2, 2020) (citing *McCoy*, 981 F.3d at 281); *see also United States v. Spencer*, Criminal No. 2:11cr30, 2021 WL 713287, at *2 (E.D. Va. Feb. 24, 2021) (noting that "the policy statement in U.S.S.G. § 1B1.13 is no longer binding . . . after . . . *McCoy*," but that "the court finds certain of its provisions useful in addressing [compassionate release motions]").

treatment, those conditions were being properly treated while Chapman was incarcerated and are not so severe as to provide an extraordinary and compelling reason for a reduction in his sentence. Nor does the Court, in its discretion, find a reduction in sentence to be appropriate under the relevant § 3553(a) factors. The Court finds that a reduction in Chapman's sentence would undermine the need for the sentence to reflect the seriousness of the offense, promote respect for the law, provide just punishment, and afford adequate deterrence, given the nature and circumstances of the underlying offense and the history and characteristics of the Defendant. Accordingly, the Motion for Compassionate Release will be denied.

    An appropriate Order shall issue.

/s/ _____
Roderick C. Young
United States District Judge

Norfolk, Virginia
Date: May 11, 2021